UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL RUBIN, on Behalf of Himself and All Others Similarly Situated, | § § § | |
| | § | Civil Action No. 1:18-cv-0014 |
| Plaintiff, | § § | |
| | § | JURY TRIAL DEMAND |
| v. | § § | |
| AMPLIFY SNACK BRANDS, INC., THOMAS E. ENNIS, JEFFREY S. BARBER, WILLIAM DAVID CHRIST II, BENEDICT CLARKE, CHRIS ELSHAW, ANDREW S. FRIEDMAN, JOHN K. HALEY, DAWN E. HUDSON, and PAMELA L. NETZKY, | § § § § § § § § | |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**

Plaintiff Michael Rubin ("Plaintiff"), by and through his undersigned counsel, for his complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This is a class action brought on behalf of the public stockholders of Amplify Snack Brands, Inc. ("Amplify" or the "Company") against Amplify and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. § 240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer")

on a proposed transaction, pursuant to which Amplify will be acquired by The Hershey Company ("Hershey") through its wholly owned subsidiary Alphabet Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On December 18, 2017, Amplify and Hershey issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Amplify to Hershey.  Under the terms of the Merger Agreement, Hershey will acquire all outstanding shares of Amplify for $12.00 in cash per share of Amplify's common stock (the "Offer Price").  Pursuant to the Merger Agreement, Hershey, through Merger Sub, commenced the Tender Offer on January 2, 2018.  The Tender Offer is scheduled to expire at 12:00 midnight, New York City time, at the end of January 30, 2018.  The Proposed Transaction is valued at approximately $1.6 billion.

3.      On January 2, 2018, Amplify filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Amplify stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Amplify's financial projections, relied upon by Amplify's financial advisor, Jefferies LLC ("Jefferies") in connection with rendering its fairness opinion; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Jefferies; and (iii) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Amplify stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

4.     In short, the Proposed Transaction will unlawfully divest Amplify's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.   To remedy Defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   Amplify is incorporated in Delaware and is headquartered in this District.   Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Amplify.

9.      Defendant Amplify is a Delaware corporation with its principal executive offices located at 500 West 5th Street, Austin, Texas, 78701.  Amplify is a snack food company focused on developing and marketing products that appeal to consumers' growing preference for better-for-you ("BFY") snacks.  Amplify's common stock is traded on the New York Stock Exchange under the ticker symbol "BETR."

10.     Defendant Thomas C. Ennis ("Ennis") has been Chief Executive Officer ("CEO"), President, and a director of the Company since July 2014.

11.     Defendant Jeffrey S. Barber ("Barber") has been Chairman of the Board since April 2015 and a director of the Company since July 2014.

12.     Defendant William David Christ II ("Christ") has been a director of the Company since July 2014.

13.     Defendant Benedict Clarke ("Clarke") has been a director of the Company since August 2017.

14.     Defendant Chris Elshaw ("Elshaw") has been a director of the Company since May 2015.

15.     Defendant Andrew S. Friedman ("Friedman") is a founder of the Company and has been a Senior Advisor and a director of the Company since July 2014.  Defendant Friedman previously served as the CEO of SkinnyPop Popcorn LLC, the Company's predecessor, from August 2010 to July 2014.

16.     Defendant John K. Haley ("Haley") has been a director of the Company since April 2015.

17.     Defendant Dawn E. Hudson ("Hudson") has been a director of the Company since October 2014.

18.   Defendant Pamela L. Netzky ("Netzky") is a founder of the Company and has been a Senior Advisor and director of the Company since July 2014.   Defendant Netzky previously served as the President of SkinnyPop Popcorn LLC.

19.   Defendants identified in paragraphs 10-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.   Hershey is a Delaware corporation with its principal executive offices located at 100 Crystal A Drive, Hershey, Pennsylvania, 17033.   Hershey is the largest producer of quality chocolate in North America and a global leader in chocolate and non-chocolate confectionery. Hershey's common stock is traded on the New York Stock Exchange under the ticker symbol "HSY."

21.   Merger Sub is a Delaware corporation and wholly owned subsidiary of Hershey.

## CLASS ACTION ALLEGATIONS

22.   Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Amplify common stock (the "Class").   Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

23.   Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.   The Class is so numerous that joinder of all members is impracticable.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.   As of

December 15, 2017, there were 76,739,908 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Amplify or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

25. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether Defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

26. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

29.     Amplify is a high-growth snack food company focused on developing and marketing products that appeal to consumers' BFY snacks.  The Company's brands primarily compete in the salty snack segment, which includes products such as potato chips, tortilla chips, popcorn, cheese snacks and pretzels.  Amplify's products are comprised of SkinnyPop, Tyrrells, Paqui, Oatmega, Thomas Chipman, the Wholesome Food Company and Lisa's Chips.  The SkinnyPop and Tyrrells brands have established themselves in the North America region and Europe region, respectively.  SkinnyPop, the Company's anchor brand, is a market-leading BFY ready-to-eat popcorn brand that launched in 2010.  The SkinnyPop brand started with three core ingredients: popcorn, sunflower oil and salt, and is now comprised of six different flavors.

30.     On September 2, 2016, Amplify completed the acquisition of Crisps Topco Limited and Subsidiaries ("Tyrells") for approximately £278 million in cash.  Defendant Ennis commented on the transaction, stating:

> We took a tremendous step forward to build upon our Better-For-You snacking growth strategy with the acquisition of Tyrrells and its international portfolio of premium snack brands. . . . We . . . look forward to significantly broadening our international customer reach, meaningfully diversifying our brand, product, category, geographic and retail presence, as we realize the benefits of operating scale to fuel our future revenue synergies and continued sales and profit growth.

31.     On August 8, 2017, the Company issued a press release announcing its second-quarter 2017 financial results.  For the quarter, net sales increased to $101.0 million, a 68.7% increase compared to the second quarter of 2016.  Defendant Ennis commented on the quarter's financial results, stating:

> We are pleased with the continued growth and momentum across our portfolio of better-for-you brands. SkinnyPop's ready-to-eat offering and compelling new product innovation fueled velocity and distribution gains and we benefited from growth in our Paqui and Oatmega brands, in spite of ongoing challenges in the

U.S. food retail environment. Our International team continued to make good progress on the improvement of our operating performance during the second quarter, although we continue to expect it to take time for us to return to the rate of growth and profitability we know the business is capable of achieving.

32.     On November 7, 2017, Amplify issued a press release announcing its third-quarter 2017 financial results.  For the quarter, net sales were $94.9 million, a 39.5% increase compared to the third quarter of 2016.  Though the Company faced challenges in the third quarter, Defendant Ennis remained positive, stating:

> In the face of a difficult environment in food retail, we believe we can be a trusted partner for our customers to help drive growth as we deepen our strategic relationships with them. During the quarter, we continued to make key investments in our leading better-for-you brands increasing consumer engagement initiatives, adding talented team members, executing against our operational improvement and cost reduction initiatives and enhancing our systems and processes to support strong future growth and profitability. Furthermore, our brands continue to perform well and we are particularly encouraged by the performance of our new product innovations. Looking ahead, we remain excited about the significant potential of our portfolio of brands and believe we have the right people, processes and plans to achieve the growth and profitability we know we are capable of over the next several years.

**The Process Leading Up to the Proposed Transaction**

33.     From January to March 2017, the Company and Jefferies had contact with eleven companies and received interest from two additional companies, regarding their interest in a potential transaction with the Company.  Six of these companies, including Hershey, entered into confidentiality agreements with the Company.  On March 6, 2017, one of these parties submitted an indication of interest to acquire the Company for $13.25-$13.75 per share.

34.     In April 2017, following Board discussion, the Board suspended the strategic process.

35.     In early September 2017, a large company in the food industry met with Defendant Ennis to indicate this party's interest in exploring a stock-for-stock transaction with Amplify.

36.     On September 12, 2017, Hershey contacted Jefferies and indicated Hershey's intent to provide an indication of interest for the Company of $9.00 per share.

37.     In early November 2017, Hershey and two parties that participated in the March 2017 process attended management presentations.

38.     On November 15, 2017, Hershey presented a revised proposal to acquire the Company for $10.00 per share, which proposal expired at 12:00 p.m. on November 20, 2017.

39.     On November 19, 2017, one of the parties that attended the management presentation submitted an indication of interest to acquire the Company at a price range of $9.00 to $10.50 per share.

40.     On December 17, 2017, Hershey submitted a revised proposal to acquire the Company for $12.00 per share.

41.     Later that day, Jefferies rendered its fairness opinion and the Board approved the Merger Agreement.  The parties then executed the Merger Agreement.

**The Proposed Transaction**

42.     On December 18, 2017, Amplify and Hershey issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> HERSHEY, Pa. and AUSTIN, Texas, Dec. 18, 2017 -- The Hershey Company (NYSE:HSY) ("Hershey") and Amplify Snack Brands, Inc. (NYSE:BETR) ("Amplify") today announced that they have entered into a definitive agreement under which Hershey will acquire all outstanding shares of Amplify for $12.00 per share in cash.
>
> "The acquisition of Amplify and its product portfolio is an important step in our journey to becoming an innovative snacking powerhouse as together it will enable

us to bring scale and category management capabilities to a key sub-segment of the warehouse snack aisle," said Michele Buck, The Hershey Company President and Chief Executive Officer. "Hershey's snack mix and meat snacks products, combined with Amplify's Skinny Pop, Tyrrells, Oatmega, Paqui and other international brands, will allow us to capture more consumer snacking occasions by creating a broader portfolio of brands."

"Since Amplify's inception in 2014, our company's goal has been to bring transparency to our products, and clean ingredients and great tasting snacks to consumers," said Tom Ennis, Amplify Snack Brands, Inc. President and Chief Executive Officer. "This transaction is a continuation of our mission as Hershey also believes in bringing to consumers great-tasting snacks made with the best ingredients possible. Hershey is a great cultural partner for Amplify and I'm excited for our team who will have access to Hershey's marketing and go-to-market resources to take our brands to the next level."

This strategic acquisition is expected to be accretive to Hershey's financial targets given the growth trajectory and margin structure of Amplify's key products. Amplify's brands compete in many attractive food categories that are capitalizing on fast-growing trends in snacking with a focus on better-for-you products that deliver clean, simple and transparent ingredients as well as unique flavors and forms. Additionally, this combination brings customers a known brand building partner that invests in category management solutions to drive higher levels of conversion and velocity at retail.

Under the terms of the agreement between Hershey and Amplify, Hershey has agreed to acquire all of the outstanding shares of Amplify Snack Brands, Inc. for $12.00 per share, in a transaction structured as a tender offer followed by a merger, valued at approximately $1.6 billion, including net debt and including a make-whole payment of $76 million related to the Tax Receivable Agreement ("TRA"). Based on previously announced guidance, this represents a multiple of approximately 14.8-times 2017 Adjusted EBITDA including identified annual run-rate synergies of approximately $20 million expected to be generated over the next two years from cost savings and portfolio optimization. The transaction will be funded with cash on hand and new debt and is not expected to impact Hershey's current ratings. Hershey expects the transaction to be accretive to adjusted earnings per share-diluted, including transaction related non-cash amortization, in the first-year post closing with accretion increasing in year two. Adjusted earnings per share-diluted accretion in both years is substantially higher when excluding transaction related amortization. The acquisition is not expected to affect the previously announced full year 2017 outlooks provided in Hershey's and Amplify's third quarter earnings release and conference calls.

The agreement has been approved by the Boards of Directors of both companies. Affiliates of TA Associates, Amplify's largest stockholder, and key Amplify insiders, who collectively represent approximately 57%3 of the outstanding

shares, have agreed to tender their shares in the transaction. The transaction is subject to Amplify's stockholders tendering a majority of Amplify's outstanding shares on a fully diluted basis prior to the expiration of the tender offer, certain regulatory approvals and other customary conditions, and is expected to close in the first quarter of 2018.

**Insiders' Interests in the Proposed Transaction**

43.     Hershey and Amplify insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Amplify.

44.     Company insiders stand to reap a substantial financial windfall for securing the deal with Hershey.  Pursuant to the Merger Agreement, each outstanding Company stock option, share of Company restricted stock and Company restricted stock unit will be converted into the right to receive cash payments.  The following table sets forth the cash payments the Company's executive officers and directors stand to receive in connection with their equity awards:

| | Vested Company Stock Options | | | Unvested Company Stock Options | | | Company Restricted Stock Units | | Company Restricted Stock | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Shares Underlying Vested Company Stock Options (#) | Exercise Price ($) | Aggregate Vested Company Stock Option Payment ($)(1) | Shares Underlying Unvested Company Stock Options (#) | Exercise Price ($) | Aggregate Unvested Company Stock Option Payment ($)(1) | Company Restricted Stock Units (#) | Aggregate Company Restricted Stock Units Payment ($)(2) | Shares of Company Restricted Stock (#) | Aggregate Company Restricted Stock Payment ($)(3) | Total Equity Award Consideration ($) |
| **Executives** | | | | | | | | | | | |
| Tom Ennis | — | — | — | — | — | — | 130,625 | 1,567,500 | 379,124 | 4,549,488 | 6,116,988 |
| Gregory Christenson | — | — | — | 699,704 | 7.04 | 3,470,532 | 144,687 | 1,736,244 | — | — | 5,206,776 |
| Brian Goldberg | — | — | — | — | — | — | 38,250 | 459,000 | 245,543 | 2,946,516 | 3,405,516 |
| Craig Shiesley | — | — | — | 1,166,173 | 7.06 | 5,760,895 | — | — | — | — | 5,760,895 |
| | | | | | | | | | | | |
| **Directors(4)** | | | | | | | | | | | |
| Benedict Clarke | — | — | — | — | — | — | 27,972 | 335,664 | — | — | 335,664 |
| Chris Elshaw | — | — | — | — | — | — | — | — | 36,818 | 441,816 | 441,816 |
| John Haley | — | — | — | — | — | — | — | — | 32,216 | 386,592 | 386,592 |
| Dawn Hudson | — | — | — | — | — | — | — | — | 41,357 | 496,284 | 496,284 |

45.     Additionally, the Company's directors and executive officers will receive substantial cash consideration in connection with tendering their shares of Company common stock in the Tender Offer, as set forth in the following table:

| | Number of Shares (#) | Cash Value of Shares ($) |
|---|---|---|
| **Executives** | | |
| Tom Ennis | 2,269,824 | 27,237,888 |
| Gregory Christenson | — | — |
| Brian Goldberg | 908,686 | 10,904,232 |
| Craig Shiesley | — | — |
| **Directors** | | |
| Jeffrey Barber | 55,742* | 668,904 |
| William Christ II | 52,535** | 630,420 |
| Benedict Clarke | — | — |
| Chris Elshaw | 69,031 | 828,372 |
| Andrew Friedman | 2,564,323 | 30,771,876 |
| John Haley | 73,633 | 883,596 |
| Dawn Hudson | 169,612 | 2,035,344 |
| Pamela Netzky | 2,313,223 | 27,758,676 |
| **All of our directors and executive officers as a group (12 persons)** | **8,476,609** | **$ 101,719,308** |

46.     Further, if he is terminated in connection with the Proposed Transaction, Defendant Ennis, as Amplify's named executive officer, is set to receive substantial cash payments in the form of golden parachute compensation.  The following table sets forth the golden parachute compensation that Defendant Ennis stands to receive in connection with the Proposed Transaction:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Tom Ennis | 1,330,000 | 6,116,988 | 54,816 | 7,501,804 |

## The Recommendation Statement Contains Material Misstatements or Omissions

47.     Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Amplify's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal.

48.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Amplify's financial projections, relied upon by Amplify's financial advisor Jefferies; (ii) the data and inputs underlying the financial valuation analyses that support

the fairness opinion provided by Jefferies; and (iii) Company insiders' potential conflicts of interest. Accordingly, Amplify stockholders are being asked to make a decision whether to tender their shares in connection with the Tender Offer or seek appraisal without all material information at their disposal.

***Material Omissions Concerning Amplify's Financial Projections***

49. The Recommendation Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

50. First, the Recommendation Statement omits material information regarding Amplify management's financial projections and the financial analyses performed by the Company's financial advisor, Jefferies.

51. For example, the Recommendation Statement states that "Jefferies performed a discounted cash flow analysis of the Company by calculating the estimated present value of the standalone unlevered, after-tax free cash flows that the Company was forecasted to generate during the fiscal years ending December 31, 2018 through December 31, 2022, based on internal estimates of the Company's management. For purposes of this analysis, (i) the estimated present value (approximately $6.1 million) of the Company's portion (15%) of tax-deductible amortization not subject to the TRA during the fiscal years ending December 31, 2018 through December 31, 2030, and the estimated present value (approximately $1.2 million) of the Company's potential net operating loss carryforwards expected by the Company's management to be utilized by the Company during the fiscal years ending December 31, 2018 and December 31, 2019, were taken into account, and (ii) stock-based compensation was treated as a cash expense." Recommendation Statement at 33. The Recommendation Statement, however, fails to disclose the Company's stock-based compensation that was treated as a cash

expense and further fails to disclose the line items utilized to calculate the Company's unlevered free cash flows, including: (i) income tax expense; (ii) depreciation and amortization; (iii) capital expenditures; and (iv) changes in net working capital.

52.     The omission of this information renders the statements in the "Certain Prospective Financial Information" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Jefferies' Financial Analyses***

53.     The Recommendation Statement describes Jefferies' fairness opinion and the various valuation analyses performed in support of its opinion.   However, the description of Jefferies' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, Amplify's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Jefferies' fairness opinion in determining whether to tender their shares in connection with the Tender Offer or seek appraisal.   This omitted information, if disclosed, would significantly alter the total mix of information available to Amplify's stockholders.

54.     With respect to Jefferies' *Selected Public Companies Analyses*, the Recommendation Statement fails to disclose: (i) the adjusted EBITDA and EPS multiples observed for each of the 12 selected publicly traded companies; and (ii) the benchmarking analyses for Amplify in relation to the target companies and the financial operating characteristics and other factors observed by Jefferies.

55.     With respect to Jefferies' *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the latest twelve months adjusted EBITDA and next

twelve months estimated adjusted EBITDA multiples for each target company analyzed by Jefferies.

56.    With respect to Jefferies' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 12.5% to 13.5%; (ii) the total amount of stock-based compensation that was treated as a cash expense in the analysis; and (iii) the implied perpetuity growth rates resulting from the analysis.

57.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

58.    The omission of this information renders the statements in the "Financial Analyses" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

59.    Further, the Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Amplify insiders.

60.    The Recommendation Statement fails to disclose whether any Amplify officers or directors will continue with the combined company after completion of the Proposed Transaction.  The Recommendation Statement further fails to disclose the details of any employment related discussions and negotiations that occurred between Hershey and Amplify executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of Hershey's prior proposals or indications of interest mentioned management retention.

61.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

62.     The omission of this information renders the statements in the "Past Contracts, Transactions, Negotiations and Agreements," and "Background of the Transactions; Reasons for the Recommendation of the Board," sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

63.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Class Claims Against All Defendants for Violations of
Section 14(d) of the Exchange Act and SEC Rule 14d-9**

64.     Plaintiff repeats all previous allegations as if set forth in full.

65.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Amplify stockholders to tender their shares in the Tender Offer.

66.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

67.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

68.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

69.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

70.     Plaintiff repeats all previous allegations as if set forth in full.

71.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

72.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

73.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Class Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

74.     Plaintiff repeats all previous allegations as if set forth in full.

75.     The Individual Defendants acted as controlling persons of Amplify within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Amplify and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

78.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

79.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Amplify, and against Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event that Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  January 5, 2018.

Respectfully submitted,


_____/s/ Thomas E. Bilek_____
THOMAS E. BILEK
TX Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
Alexandra E. Eisig
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY  10036
Tel: (212) 682-3025
Fax: (212) 682-3010